# United States District Court
## for the Northern District of Oklahoma

Case No. 24-cv-589-JDR-SH

Jason Rafael Brown,

*Plaintiff,*

versus

Turning Point Data, Inc.,

*Defendant.*

### OPINION AND ORDER

Plaintiff Jason Rafael Brown sued Defendant Turning Point Data, Inc., which does business under the name Direct Screening, for violating two provisions of the Fair Credit Reporting Act: 15 U.S.C. §§ 1681e(b) and 1681i. Mr. Brown alleges that Direct Screening failed to follow reasonable procedures to ensure the accuracy of a consumer credit report and failed to perform a reasonable investigation of the accuracy of information maintained in Mr. Brown's consumer file. *See* Dkt. 29. Direct Screening has moved to dismiss count I of Mr. Brown's amended complaint on the grounds that it never issued a "consumer report" for purposes of § 1681e(b). The Court disagrees. Direct Screening's partial motion to dismiss is denied.

I

In September 2024, Jason Brown applied for enrollment to Full Sail University. Dkt. 29 at 7.[1] Full Sail instructed Mr. Brown to submit a National Background Report and gave him two options for doing so. *Id.* at 8. Mr. Brown

---

[1] All citations utilize CMECF pagination.

requested a "self-report" from Direct Screening. *Id.* Upon receiving the report, he transmitted it to the university without reviewing its contents. *Id.* Mr. Brown later discovered that the report incorrectly included several references to criminal convictions in Illinois and Arizona. *Id.* at 8-12. Those offenses were committed by a different person with a different middle initial, a different driver's license number, and a different social security number than Mr. Brown. *Id.*

Count I of Mr. Brown's amended complaint alleges that Direct Screening had a statutory obligation to "follow reasonable procedures to assure maximum possible accuracy of the information" in that report. 15 U.S.C. § 1681e(b); *see* Dkt. 29 at 16. He claims that Direct Screening failed to perform reasonable procedures, such as consulting public records or investigating obvious discrepancies, that would have ensured the accuracy of the report's contents. *Id.* at 11-16. As a result of that failure, Direct Screening issued an erroneous report that delayed Mr. Brown's enrollment at the university. In this lawsuit, Mr. Brown seeks damages for losses allegedly caused by the incorrect report. *Id.* at 15-16.

II

In Direct Screening's motion to dismiss count I, it argues that, even if the Court accepts the facts alleged by Mr. Brown as true (which it must at this stage of the proceedings),[2] Mr. Brown cannot prevail on his claim as a matter of law. Direct Screening acknowledges its obligation to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" when it issues a "consumer report." 15 U.S.C. § 1681e(b). But Direct Screening argues that the statutory obligation arises only when a "consumer report" is issued and that no

---

[2] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (recognizing "the bedrock principle that a judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the ground that it appears unlikely that the allegations can be proven").

No. 24-cv-589

"consumer report" was issued in this case. According to Direct Screening, §1681a(d) defines "consumer report" to mean information used or collected *for use by third parties* and, consequently, the term only applies to reports *sent to* third parties. Dkt. 33 at 2, 3. It argues that Mr. Brown did not receive a "consumer report" when he requested a report on himself and that, consequently, it cannot be held liable for failing to comply with the requirements for "prepar[ing] a consumer report" under the FCRA. *See* 15 U.S.C. §§ 1681n, 1681o (imposing civil liability for willful and negligent noncompliance with the requirements of the FCRA).

Mr. Brown disagrees. He contends that nothing in the FCRA limits "consumer reports" to reports sent to third parties. According to Mr. Brown, any report can be a "consumer report" so long as it is intended for use by a third party. Dkt. 35 at 10-20. Mr. Brown argues that the report he requested satisfies all the express statutory requirements of a "consumer report" as that term is defined in § 1681a(d) and, as a result, Direct Screening had an obligation to follow reasonable procedures to ensure the accuracy of that report.

The parties' dispute turns on a single question: Is a report that a consumer requests and receives about himself a "consumer report" for purposes of § 1681e? The parties agree that there is no binding authority addressing this question.[3] In the absence of controlling precedent, it falls to this Court to determine the appropriate scope of the disputed statutory term. *See N.L.R.B. v. Hearst Publications*, 322 U.S. 111, 130–31 (1944), *superseded by statute as recognized in N. L. R. B. v. United Ins. Co. of Am.*, 390 U.S. 254, 256 (1968) (recognizing that "questions of statutory interpretation . . . are for the courts to resolve"). *Cf. Phelps v. Lynch*, No. 15-cv-01405-NYW, 2016 WL 9735779, at

---

[3] *See* Dkt. 33 (relying on authority from outside the Tenth Circuit); Dkt. 35 at 12 (recognizing that "the Tenth Circuit courts have not addressed this particular issue"); Dkt. 37 at 2 (relying on authority from outside the Tenth Circuit).

3

*6 (D. Colo. Sept. 12, 2016) (recognizing that a district court "is not at liberty to ignore binding authority interpreting [a] statutory provision").

We must begin with the language of the statute itself to determine the meaning of a disputed statutory term. *See N. Arapaho Tribe v. Becerra*, 61 F.4th 810, 814 (10th Cir. 2023). The court should consider not only the disputed provision, but also "the broader context of the statute as a whole . . . ." *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011) (quoting *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009)). If the language of the statute is unambiguous, the Court should go no further; it must interpret the statute in accordance with its plain, unambiguous meaning. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." (citation and quotation marks omitted)); *United States v. Broadway*, 1 F.4th 1206, 1211 (10th Cir. 2021). If, however, the statute is ambiguous, the Court may consider traditional canons of statutory interpretation to discern the provision's meaning. *Ramah*, 644 F.3d at 1062. In some cases, legislative history can clarify an ambiguous provision, but the weight and value to be afforded legislative history is context-dependent. *See Hadden v. Bowen*, 851 F.2d 1266, 1268 (10th Cir. 1988) (recognizing that legislative history "is entitled to consideration" but the "weight given an item of legislative history" depends on circumstances).

### A

The term "consumer report" is defined in the FCRA, 15 U.S.C. § 1681a(d)(1), as (1) "a communication," written or oral, that (2) "bear[s] on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living," (3) is made "by a consumer reporting agency," and (4) "is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for" credit, insurance, employment, or another authorized purpose.

No. 24-cv-589

1681a is plain and unambiguous, and that the term "consumer report" is not limited to "reports sent to third parties" as suggested by Direct Screening.

The broader context of the FCRA supports this conclusion. The Act recognizes that consumers can, in certain circumstances, be provided with consumer reports. For example, § 1681g calls for the creation of a method by which consumers can "contact, *and obtain a consumer report from*, a consumer reporting agency without charge." 15 U.S.C. § 1681g(c)(1)(B)(v) (emphasis added). The Act also requires the "establishment of a streamlined process *for consumers to request consumer reports*" once during any 12-month period without charge 15 U.S.C. § 1681j(a)(1)(C)(i) (emphasis added).[4] The term "consumer report" is presumed to have the same meaning when it is used in § 1681g as it does when used in §§ 1681a and 1681e. *See Sorenson v. Sec'y of the Treasury*, 475 U.S. 851, 860 (1986) (recognizing the "normal rule of statutory construction" that "identical words used in different parts of the same act are intended to have the same meaning" (citation and quotation marks omitted)); *Sierra Club v. Seaboard Farms Inc.*, 387 F.3d 1167, 1175 (10th Cir. 2004) ("When Congress uses a technical term in a statute, it is presumed that it has intended that the term have the same meaning in each of the sections or subsections."). Thus, the term "consumer report" must encompass "reports sent to consumers." To hold otherwise would run contrary to this court's obligation to "presume that Congress enacted sensible legislation that avoids unjust, impractical, or absurd outcomes." *BP America Prod. Co. v. Haaland*, 87 F.4th 1226, 1234 (10th Cir. 2023).

Direct Screening suggests that the third-party transmission requirement can be found in § 1681a(f). Dkt. 33 at 3. That subsection defines the term "consumer reporting agency" to mean any person that regularly engages in "the practice of assembling or evaluating consumer credit information or other information on consumers *for the purpose of furnishing*

---

[4] *See also* 15 U.S.C. § 1681m(a)(4); 15 U.S.C. § 1681m(h)(5)(C).

No. 24-cv-589

*consumer reports to third parties . . . .*" 15 U.S.C. § 1681a(f) (emphasis added). The Court acknowledges the circular nature of §§ 1681a(d)(1) and 1681a(f),[5] but it does not conclude, as Direct Screening does, that the latter limits the former. The entirety of the Act demonstrates that not all "consumer reporting agencies" generate consumer reports on a continuing basis: Some simply collect and resell information that is used by other entities that produce consumer reports,[6] while others do not generate third-party reports on a "continuing basis."[7] Taken as a whole, the Act demonstrates that the limiting terms in § 1681a(f) are designed to (1) capture those entities that assemble or evaluate information "for the purposes of furnishing consumer reports" for third parties, even if they do not produce the reports themselves, while (2) excluding from coverage those entities that do not *regularly engage* in those activities. The language of § 1681a(f) does not limit what a "consumer report" is. Instead, it recognizes that the statute is directed primarily at those entities that *regularly* engage in activities for the purposes of furnishing reports to third parties but *may also* engage in activities that pertain to the generation of consumer reports for other purposes.

This conclusion is consistent with the use of the "for third parties" limitation throughout the Act. For example, § 1681a(f) limits the term "consumer reporting agency" to mean any person that regularly engages in "the practice of assembling or evaluating consumer credit information . . . for the

---

[5] *Compare* 15 U.S.C. § 1681(a)(d)(1) (defining "consumer report" to mean a communication by a "consumer reporting agency"), *with* 15 U.S.C. § 1681a(f) (defining "consumer reporting agency" as any person that assembles or evaluates information "for the purpose of furnishing consumer reports to third parties").

[6] *See* 15 U.S.C. § 1681a(u) (defining "reseller" to mean "a consumer reporting agency" that assembles information "contained in the database of another consumer reporting agency or multiple consumer reporting agencies" but does not "maintain a database . . . from which new consumer reports are produced").

[7] *See* 15 U.S.C. § 1681j(a)(4) (excluding consumer reporting agencies "that ha[ve] not been furnishing consumer reports to third parties on a continuing basis" from the requirements of that subsection).

purpose of furnishing consumer reports *to third parties*." 15 U.S.C. § 1681a(f) (emphasis added). Section 1681j(a), which imposes requirements on some (but not all) consumer reporting agencies, uses the same descriptor. 15 U.S.C. § 1681j(a)(4) (excluding from coverage those consumer reporting agencies that have "not been furnishing consumer reports *to third parties* on a continuing basis during the 12-month period" (emphasis added)). If, as Direct Screening claims, Congress intended to define "consumer report" to encompass only "reports sent to third parties," there would be no need for Congress to specify that a "consumer reporting agency" is one that regularly assembles information "for the purpose of furnishing consumer reports *to third parties*." 15 U.S.C. § 1681a(f) (emphasis added). Nor would there be a need for Congress to specify that agencies that had not "been furnishing consumer reports *to third parties* on a continuing basis" would be relieved of the obligations set forth in § 1681j(a) (emphasis added). The third-party limitation would be implied in the term "consumer report." Direct Screening's proposed construction of "consumer report" would render the "to third parties" limitation in § 1681a(f) and § 1681j mere surplusage, and this Court should not "construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous." *Bridger Coal Co./Pac. Mins., Inc. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Labor*, 927 F.2d 1150, 1153 (10th Cir. 1991). To avoid rendering the Act's use of the phrase "to third parties" meaningless, the Court must conclude that the term "consumer reports" is not, by definition, limited to third-party reports.

Direct Screening argues that §§ 1681a(d) and 1681b broadly demonstrate that "Congress intended the FCRA to deal with reports provided to third parties." Dkt. 37 at 4. But "[g]oing behind the plain language of a statute in search of a possibly contrary congressional intent is 'a step to be taken cautiously' even under the best of circumstances." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 75 (1982) (quoting *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 26 (1977)). The circumstances of this case do not warrant asking what

Congress *meant* because it is clear what Congress *said*—and did not say. Congress did not add a third-party disclosure limitation to the definition of "consumer report," even though it knew how to do so. *See* 15 U.S.C. § 1681a(f). Congress did not exclude "self-reports" from the definition of "consumer report," even though it excluded other communications from this definition based on the identity of the recipient. *See* 15 U.S.C. § 1681a(d)(2)(A)(iii). And Congress used "consumer reports" to refer to the reports sent to consumers, even though it could have chosen a different phrase to refer to those communications. *See* 15 U.S.C. § 1681a(g) (defining consumer "file" to mean "all information recorded and retained by a consumer reporting agency"); 15 U.S.C. § 1681c-1(a)(2)(A) (permitting consumers to request copies of their files). If Congress intended to limit "consumer reports" to "reports to third parties," it could have, and should have. It did not. The statutory language does not support the construction proposed by Direct Screening, and the Court will not adopt it here.

B

Direct Screening points to several cases to support its position. None of those opinions are binding on this Court, and, in any event, the Court finds them unpersuasive. Most of the cases cited by Direct Screening do not involve a rigorous statutory analysis and, instead, rely on other courts' conclusions that "consumer reports" are limited to "third-party reports."[8] Others suggest that a report must be published to a third party before a cognizable injury can be redressed, but they do not consider whether that disclosure

---

[8] *See Peeples v. Nat'l Data Rsch., Inc.*, No. 1:22-cv-1764-SCJ-CMS, 2024 WL 671628, at *5 (N.D. Ga. Jan. 4, 2024), *report and recommendation adopted*, No. 1:22-cv-01764-SCJ, 2024 WL 1476201 (N.D. Ga. Feb. 27, 2024) (relying on other authority for the proposition that documents provided to consumers cannot constitute consumer reports); *Barreto v. Equifax Info. Servs. LLC*, No. 1:22-cv-04941-VMC-RDC, 2023 WL 4047693, at *3 (N.D. Ga. May 25, 2023), *report and recommendation adopted*, No. 1:22-cv-04941-VMC-RDC, 2023 WL 4996555 (N.D. Ga. July 19, 2023) (same); *Seckinger v. Equifax Info. Servs., LLC*, No. CV 415-304, 2018 WL 1511170, at *7 (S.D. Ga. Mar. 27, 2018) (same).

No. 24-cv-589

must take place directly.⁹ These cases do nothing to counter the overwhelming statutory evidence that Congress did not limit "consumer reports" to "third-party reports." The statutory language controls here, and that language does not foreclose Mr. Brown's claim as a matter of law.

### III

The Court is sympathetic to Direct Screening's concerns about the fairness of this result. After all, why should Mr. Brown be permitted to receive an inaccurate report, send it on to a university without looking at it, and then receive damages for the injury that he could have prevented? And it may be that Direct Screening will be able to assert successful defenses akin to those available in defamation cases. *E.g., Losch v. Nationstar Mrog. LLC*, 995 F.3d 937 (11th Cir. 2021) (analogizing FCRA claims to traditional defamation claims). But that is not the question before the Court. The only question that Direct Screening's motion presents is whether, as a matter of law, a report must be disclosed directly to a third party to qualify as a "consumer report" for purposes of the FCRA. The Court answers that question in the negative. Accordingly, Direct Screening's partial motion to dismiss is denied.

DATED this 25th day of August 2025.

_____
JOHN D. RUSSELL
*United States District Judge*

---

⁹ *E.g., Wantz v. Experian Info. Sols.*, 386 F.3d 829, 832 (7th Cir. 2004), *as amended* (Nov. 16, 2004), *abrogated by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) (affirming grant of summary judgment when the plaintiff had presented no evidence that the defendant, "as opposed to another consumer reporting agency, ever disclosed any damaging information" about him); *Dwyer v. Contemp. Info. Corp.*, No. 2:24-cv-00199-GSL-APR, 2025 WL 1635053, at *2 (N.D. Ind. June 5, 2025) (holding that plaintiff class lacked standing where they had alleged only that reports contained defamatory content but did not allege how members of the class were injured).